IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VERONICA L. GIBSON,

       Plaintiff,

vs.                                                                            No. CIV 04-1012 LCS

JOANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion to Reverse and Remand Administrative Agency Decision [Docket # 7], filed January 24, 2005. The Commissioner of Social Security issued a final decision denying Plaintiff's application for supplemental security income on August 4, 2004. This matter comes before the Court pursuant to 28 U.S.C. § 636(c). The United States Magistrate Judge, having considered the Motion, briefs, administrative record, and applicable law, finds that this Motion is well-taken and should be **GRANTED**.

**I.     STANDARD OF REVIEW**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *Hamilton v. Sec'y of Health and Human Svcs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such relevant evidence as a reasonable mind might accept to support the conclusion. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). The decision of an Administrative Law Judge ("ALJ") is not supported by substantial evidence if the evidence supporting the decision is

overwhelmed by other evidence on the record. *Id*. at 805.

In order to qualify for supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of at least twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)(1)(A)). The Secretary has established a five-step process for evaluating a disability claim. *Bowen v. Yuckert*, 482 U.S. 137 (1987). At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment, that he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpart P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education and prior work experience. *See Gatson v. Bowen*, 838 F.2d 442, 448 (10th Cir. 1998).

## II.   PROCEDURAL HISTORY

Plaintiff, now 46 years old, filed her application for supplemental security income under Title XVI of the Social Security Act on November 6, 2002 (R. at 54), alleging disability commencing on May 1, 2002. Plaintiff has a high-school education and completed two years of college. (R. at 67). Plaintiff has a listed past relevant work as a housekeeper and as a waitress. (R. at 64, 69).

Ms. Gibson's application for supplemental security income was denied at the initial level on April 4, 2003 and at the reconsideration level on May 19, 2003. (R. at 31, 37). Following the denial of her application, Plaintiff filed a Request for Hearing before Administrative Law Judge. (R. at 41), and appointed Christy McDonald to act as her representative at the hearing. (R. at 27). This hearing took place on November 19, 2003. (R. at 206).

The ALJ issued his decision on Plaintiff's application on April 4, 2004 (R. at 12-20), analyzing Plaintiff's claim in accordance with the sequential evaluation set forth in 20 C.F.R. § 404.1520(a)-(f). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. (R. at 16). At the second and third steps, the ALJ determined that, while Ms. Gibson had severe impairments of back pain, memory loss, migraine headaches, alcohol abuse in remission and adult attention deficit hyperactivity disorder ("ADHD"), none of these impairments were of the severity required to meet an impairment found in the Listing of Impairments ("Listings"), Appendix I, Subpart P, 20 C.F.R. §§ 401.1501-1599. (R. at 17). The ALJ determined at step four that Plaintiff retained the Residual Functional Capacity ("RFC") to perform a medium range of work of a simple, repetitive nature. (R. at 18). The ALJ further found, after consulting a vocational expert, that Ms. Gibson was capable of returning to her past relevant work. (R. at 19). Because it was found that Plaintiff could return to her past relevant work, the ALJ did not perform a step five analysis to determine whether other jobs existed in the national economy that Plaintiff could perform. (Id.)

Plaintiff appealed the ALJ's decision and the Appeals Council denied this appeal on July 9, 2004. (R. at 8-11). Hence, the decision of the ALJ became the final decision of the Commissioner for purposes of judicial review. On September 9, 2004, Plaintiff filed the present

action, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

### III.   FINDINGS

Ms. Gibson completed an Adult Disability Report in November of 2002, at which time she claimed impairments of back, elbow and hand pain, short-term memory loss, and migraine headaches. (R. at 62-71). Plaintiff revealed that she had been to the hospital to receive treatment for injuries sustained in several motor vehicle accidents between approximately 1987 and 2000. (Id.) She also indicated she had been to the emergency room after having been beaten severely by a domestic partner. (Id.) A field office disability report completed at approximately the same time revealed no apparent physical or mental limitations, with the caveat that Plaintiff appeared to the examiner to be very anxious. (R. at 74).

Plaintiff completed a headache questionnaire in December of 2002 in which she indicated headaches occurring approximately twice a week, accompanied by nausea, extreme pain, and sensitivity to light and sound. (R. at 86). She further indicated that stress and anxiety seemed to bring on the headaches, that she was unable to function during her headaches, and that she had on occasion sought treatment in the emergency room for her symptoms. (Id.) Ms. Gibson indicated that she was no longer able to drive, that she didn't run many errands, that she did not do housework or yardwork, and that she disliked being around large groups of people. (R. at 86-89). She stated that she had few hobbies and rarely visited friends or relatives because being around people made her anxious. (R. at 90). Sleep disturbances were also documented. (R. at 92).

Records from Dr. Alan Jakins, dated March 6, 2003, revealed that Plaintiff did have an

impairment which could be expected to last for a period greater than 12 months, and which was felt to be primarily emotional, rather than physical, in nature. (R. at 130). Dr. Jakins found no objective signs of impairment for Ms. Gibson's back and joint pain and felt that her memory loss and emotional problems would be better evaluated by a specialist in that field. (Id.)

Psychiatric evaluations performed in March of 2003 revealed multiple Axis I disorders, including dysthymic disorder, anxiety disorder NOS[1], and alcohol related disorder, with a possibility of alcohol-induced mood disorder. (R. at 138). Ms. Gibson was also felt to have borderline intellectual functioning and personality disorder NOS. (Id.) Dr. Carl Adams further noted claims of multiple unsubstantiated medical complaints and felt that Ms. Gibson's GAF score was in the 65-70 range.[2] (Id.) Additionally, Dr. Adams found Plaintiff to have mild limitations in her ability to carry out complex instructions, in her ability to concentrate, and in her ability to interact with the public. (R. at 140-141). It was felt that Ms. Gibson had a problem with alcohol which would likely affect her ability to function in a work setting. (R. at 142). Dr. Adams expected that Ms. Gibson's ability to function at work would be greatly improved if she stopped abusing alcohol. (Id.)

Plaintiff underwent a second psychiatric review in April of 2003, performed by Dr. E.

---

[1] NOS is shorthand for "not otherwise specified." It indicates a disorder with prominent anxiety or other features included in the classification which does not meet criteria for any of the specific anxiety or personality disorders as defined in the manual. *Diagnostic and Statistical Manual of Mental Disorders* 430, 685 (4th ed. 2000) [DSM-IV].

[2] The GAF scale is used to assess an individual's overall level of functioning. This information is useful in planning treatment, measuring its impact and in predicting outcome. Determining a GAF rating involves making a subjective choice of a single value that best reflects the individual's overall level of functioning. A GAF of 65-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functional (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. DSM-IV 32-34.

Chiang. (R. at 143-157). Plaintiff was noted to have dysthymia, anxiety disorder NOS and alcohol related disorder NOS. Ms. Gibson also noted physical complaints of migraine headaches, low back pain and joint pain. (R. at 155). A history of alcohol and marijuana abuse was also documented. (Id.) Plaintiff was found to be anxious and the examiner felt her responses were exaggerated and somewhat evasive. (Id.) Memory was estimated to be in the borderline range and it was felt that allegations of memory loss were somewhat credible. (Id.) No psychosis was documented. (Id.) Although mild limitations were found in a few areas, Dr. Chiang found Plaintiff's psychiatric limitations to be nonsevere. (Id.)

As of April, 2003, claimant began complaining of worsening arthritis. (R. at 107). Also at this time, Plaintiff underwent testing for hepatitis, the results of which are not entirely clear, but which seem to indicate that Ms. Gibson tested positive for the disease. (R. at 128). In June of 2003, Plaintiff listed her medications which included Strattera[3], Flexeril[4] and Ibuprofen. (R. at 114).

Plaintiff's clinical therapist, Dorothy Wurth, LMSW reported as of November, 2003 that Plaintiff had been diagnosed approximately six months previously with recurrent major depressive disorder and with attention deficit hyperactive disorder. (R. at 165). Plaintiff's hearing before the ALJ took place on November 19, 2003. At the hearing, Ms. Gibson complained of headahces, jaw pain, ADHD, anxiety, and difficulty interacting with others in public.

The record also contains medical reports dating from after the hearing which state the

---

[3]Strattera is a nonstimulant drug approved for the treatment of ADHD and is the only drug approved for the treatment of adult ADHD. http://my.webmd.com/content/article/89/100387.htm.

[4]Flexeril is indicated as an adjunct to rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions. The drug should be used only for short periods. *Physician's Desk Reference* (54th ed. 2000) 1797.

following: Ms. Gibson saw Dr. Wataru Tamura in May of 2004 for evaluation of gastrointestinal distress with nausea and vomiting. (R. at 195-198). Dr. Tamura's impression was of chronic active hepatitis C with active viremia and elevated transaminases with no evidence of synthetic dysfunction. The Plaintiff was noted to have chronic pain syndrome and to be at increased risk for gallbladder disease. (R. at 195). An abdominal ultrasound performed in June, 2004 revealed normal pancreas and liver. The kidneys and spleen were also noted to be normal. (R. at 205). The impression was of multiple gallstones with thickening of the gallbladder wall. (Id.)

Plaintiff was reevaluated by Dr. Tamura following the ultrasound. (R. at 194). Dr. Tamura believed her episodes of nausea and vomiting were most likely due to chronic cholecystitis. (Id.) A cholecystectomy with simultaneous liver biopsy was recommended. (Id.) It was felt that Ms. Gibson would be a poor candidate for antiviral therapy due to her multiple medical problems, poor pain tolerance, and depression. (Id.) Ms. Gibson was to return in two months to discuss the pros and cons of antiviral therapy. (Id.) Plaintiff was instructed to restrict alcohol, particularly if she wished to undergo antiviral therapy. (Id.)

**IV.  DISCUSSION**

In her Motion to Reverse and Remand for Rehearing, Plaintiff raises the following allegations of error:

    I.       The ALJ erred in evaluating Plaintiff's Non-Exertional Impairments

    II.      The ALJ failed to pose proper hypothetical questions to the Vocational Expert

    III.     The ALJ's credibility findings were not supported by substantial evidence

    IV.     The ALJ failed to adequately develop the record when Plaintiff appeared *pro se*.

Turning to Plaintiff's first allegation of error, she contends that the ALJ did not properly

assess her Residual Functional Capacity ("RFC") because he did not fully evaluate the extent to which her pain symptoms and ADHD affected her ability to function in the workplace. [Docket #10]. A claimant's RFC is determined by what the individual can do despite her limitations, and it is based upon all the relevant evidence, including medical records, observations of treating physicians and others, as well as on a claimant's own descriptions of her limitations. 20 C.F.R. §§ 416.945(a)-416.946.

It is apparent from the record that the ALJ did consider all of the evidence with respect to Plaintiff's diagnosis of ADHD and her complaints of pain. (R. at 17-18). *See Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996)("[T]he record must demonstrate that the ALJ considered all of the evidence."). In considering whether Plaintiff's symptoms were disabling, the ALJ noted that no treating source had restricted Ms. Gibson's activities or advised her to refrain from working. (R. at 18). Regarding Plaintiff's symptoms of pain, the ALJ referred to Dr. Jakins's examination, during which no physical limitations were found which would interfere with her ability to perform work at the medium exertional level. (Id.) Although the ALJ acknowledged information regarding injuries sustained in a 1999 domestic dispute, he noted there was presently nothing to indicate that these injuries prevented claimant from performing medium work. (Id.)

Further, it is apparent that the ALJ considered Plaintiff's other allegations of impairment including the existence of major depression, headaches, difficulties in social functioning, and drug and alcohol abuse. (R. at 16-17). Because the ALJ's opinion reveals that he did consider this evidence and did not, as Plaintiff contends, choose to reject probative evidence regarding her pain symptoms and ADHD, I find that the ALJ's determination of RFC was supported by substantial

evidence and should be upheld.

Plaintiff next contends the ALJ failed to pose proper questions to the Vocational Expert ("VE"). Specifically, Plaintiff argues that the ALJ erred in failing to include in his hypotheticals limitations which he found applied to Plaintiff. [Docket #10]. The Court has examined the hearing transcript and does not see that the ALJ posed any hypothetical questions to the VE during the hearing. (R. at 206-226). The ALJ's discussion with the VE consisted of asking questions as to the nature of claimant's past relevant work. (R. at 223-24). Because Plaintiff has not pointed to the Court to the hypothetical questions which she finds to have been deficient, and because the I cannot determine that the ALJ posed any hypothetical questions to the VE, I will not consider this argument further.

Plaintiff next contends that the ALJ erred in assessing her credibility. In particular, she argues that overwhelming evidence was presented to show that her impairments existed at a disabling level of severity. The ALJ found that Plaintiff was not fully credible regarding her limitations because, while it was apparent that Plaintiff did have limitations, these limitations did not exist, as Plaintiff argued, at a disabling level of severity.

The Tenth Circuit generally treats credibility determinations made by an ALJ as binding upon review. *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983). The Court has previously stated that credibility determinations are particularly the province of the finder of fact and the Court has declined to upset such determinations when supported by substantial evidence. *Diaz v. Sec'y of Health and Human Svcs.*, 898 F.2d 774, 777 (10th Cir. 1990).

In the present case the ALJ, contrary to ignoring the reports about Plaintiff's mental impairments, acknowledged that Plaintiff had been diagnosed with ADHD, major depression and

that some short-term memory loss had been documented.[5] (R. at 18). The ALJ noted however that consulting and treating mental health professionals had found these disorders to cause only mild limitations in Plaintiff's ability to function. (R. at 17). The ALJ also considered the fact that Plaintiff was attending counseling sessions. (R. at 18). He noted however, that no mental health professional had apparently ever diagnosed Plaintiff with more than mild functional limitations, or had advised Plaintiff to refrain from working. I find therefore that the ALJ's determination of Plaintiff's credibility was supported by substantial evidence and thus, the Commissioner's decision with respect to the ALJ's credibility determination should be upheld.

Finally, Plaintiff argues that the ALJ failed to fully and fairly develop the record. She states that, because she was not represented by counsel at her hearing, the ALJ was under a heightened duty to procure evidence. Specifically, Plaintiff argues that the ALJ should have obtained additional medical records to clarify the extent of her impairments. [Docket #10].

Plaintiff is correct to point out that, where a Social Security claimant appears before an ALJ pro se, the ALJ has a heightened duty to investigate the issues presented and to develop the record on those issues. *Younger v. Shalala*, 30 F.3d 1265, 1267 (10th Cir. 1994). The duty is one of inquiry, to inform the ALJ of the relevant facts and to hear the claimant's version of those facts. *Henrie v. United States Dep't of Health & Human Svcs.*, 13 F.3d 359, 360-61 (10th Cir. 1993). This duty however, is not a panacea for claimants, which requires reversal in any matter where the ALJ fails to exhaust every potential line of questioning. *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994). It is not the ALJ's duty to become the claimant's advocate.

---

[5]In her Reply brief, Plaintiff claims to have been diagnosed with schizophrenia. The ALJ did not mention this diagnosis, but I find no error in this omission, as I have been unable to find such a diagnosis in the record.

*Henrie*, 13 F.3d at 361.

In the present case, the hearing transcript reveals that the ALJ allowed Ms. Gibson to speak extensively on the nature of her impairments and the impact of these impairments on her physical abilities. (R. at 211-222). The claimant described her pain symptoms and mental difficulties and the effect of these symptoms on her ability to function on a daily basis. She answered questions regarding her medications and her efforts to receive treatment. (Id.) She also discussed previous employment and the circumstances that led her to discontinue that employment. (Id.)

However, turning to an issue not raised by Plaintiff's counsel, it appears that the record before the ALJ contained evidence that Plaintiff had some form of hepatitis. (R. at 128) Hepatitis is a listed impairment of chronic liver disease, when accompanied by certain symptoms under 20 C.F.R. Pt. 404, Subpart P, Appx. 1 §5.05. Although Plaintiff did not bring up the issue of hepatitis during the hearing, the ALJ was under a heightened duty to develop the record, as Plaintiff was unrepresented. *Younger*, 30 F.3d at 1267. It is not clear that the ALJ considered this evidence. It is well-established that the ALJ is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). However, the record must demonstrate that the ALJ considered all the evidence. *Id.* Because it is not clear that the ALJ considered this evidence and because the ALJ was under a heightened duty to develop the record, I find that remand is appropriate for further consideration of whether Plaintiff's impairments, taken as a whole, lead to a finding of disability.

## V.   CONCLUSION

Upon review of the evidence presented in this Motion to Reverse and Remand for

Rehearing, this Court has determined that the case should be remanded to the Commissioner for further consideration as outlined in this opinion.  Accordingly, Plaintiff's Motion to Reverse and Remand for Rehearing is **GRANTED.**

**A JUDGMENT CONSISTENT WITH THIS OPINION SHALL ISSUE.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**